24-3077 United States of America v. Derrick B. Arrington, DeFellants Ms. Wright v. DeFellants, Mr. Cahill v. Eberle Good morning, Madam Chief Good morning. May it please the Court, Lisa Wright v. Mr. Arrington, I'd like to reserve two minutes for rebuttal. The District Court's imposition on resentencing of a 65-month upward variance from a guideline range of 140 to 175 months to the statutory maximum of 240 months was procedurally unreasonable in three independent respects. To quickly summarize, the Court treated Mr. Arrington's post-sentencing rehabilitation as not relevant to the Court's sentencing task. The Court justified the 65-month variance in part on the shooting of Officer Daniels when the gunshot had already been accounted for as the Court conceded, and the Court failed to explain how the wrongfulness of inflicting that gunshot made Mr. Arrington worse than the typical defendant. And last, and where I'd like to start, the Court justified the 65-month variance in part on the theory that the guidelines provided no punishment for the illegal and stolen nature of the gun. When the government has conceded that but for the illegal nature of the gun, his guideline range and his sentence would have been capped at 120 months. Let me start you back a little bit. So what's the status of his parole revocation? Has he served his sentence? He is serving on the parole revocation now. Okay, and you believe that this impact, if we were to rule with you, would take 65 months off of his sentence? Well, it would require if any of the errors we're pointing to are confirmed or correct, then 65 months would not be justified. It would need to be a resentencing because part of the justification would have been invalid for any of our three reasons, any one of them, because they all work together to create the 65-month variance, and if there's an error in it, it needs to go back to see what variance Judge Lamberth might impose. Well, and some of your suggestion for how you get there is consideration of the post-rehabilitation factors. Right. But that is something that a court may consider, correct? Well, this court, I believe in Hunter, said that if the argument is non-frivolous, the court has to consider it. And here, the court, I think, had a misconception. He said it quite plainly. As he viewed his task, quote, I'm not sentencing the guy that's appearing before me today. I'm doing what I think would have been the sentence Judge Robertson would have imposed were you there then. And this approach not only used a benchmark, used as a benchmark a judicial decision that was based on retroactively unconstitutional guideline range, plus, you know, other. But the rest of the quote says I have to sentence you with what I have today. So do you not think that despite what might have occurred earlier, you're relying kind of on one sentence and not the totality of the record? It's a pretty blatantly incorrect way to look at it. Actually, it's correct. Because he's sentencing the defendant on the basis of the evidence that existed at the time of the original trial and sentencing. I mean, that to me is what he's saying. Of course he has to do that. Well, he says, I'm not sentencing the guy that is appearing. Yeah, I know that was after he said, you're not young anymore. Isn't it? I mean, that was this. You're not young anymore. You're mid age. It's been 24 years since you committed the offense. So you're not the same person. And he says the progress you've made is a good sign. You're on a different path. You you're not that person anymore. And then he's saying, but don't let what I'm saying about this sentence set you back. Because essentially, because even though I find that you are different, I'm not sentencing you. There's a whole line of cases. The Supreme Court included to say you don't read an opinion as if it's a statute. And there's a comparable line to say that in oral presentations of reasons for giving a particular ruling, you don't read it as if it's an opinion that's been parsed and massaged. Well, I don't think there is ambiguity in the court's words. And the government acknowledges that Judge Lambert gave no weight to this reason. And I don't think you can presume the error away in a case like this because it was a very unusual case. It wasn't a typical resentencing. It was like a lightning strike situation where the Supreme Court, which never happens, makes the guidelines retroactively unconstitutional. Judge Robertson, through no fault of his own, never had a chance to give a constitutional sentence. And I think it was understandable that Judge Lambert felt like he was taking Judge Robertson's place. Shouldn't the starting point be the statement of reasons that Judge Lambert gave for the sentence? You start with the politically or the back and forth in the oral pronouncement. But shouldn't the starting point be the written statement of reasons that he gave? Well, I think the oral statement is what they both factor in. Under the statute, he has to give a written statement of reasons. He has to do both. And in his written statement of reasons, is there any indication that he erred? Well, yes, for my other reasons. I'm talking about the rehabilitation. Well, in the written statement of reasons, he's simply saying these are the reasons I'm going down. I'm just pointing out that in making those findings, he didn't consider this counterweight that we presented. We argued this rehabilitation is relevant. And he essentially ruled because of the way he saw it. It appears that he was trying to give deference to Judge Robertson, saw himself as taking Judge Robertson's place, but got the timing a bit confused. And I think it's understandable. Just on the rehabilitation point, the Pepper case, as I read it, says that the court may consider rehabilitation in determining whether to make a downward departure. Judge Lamberth wasn't going to make a downward departure. He made an upward departure. So Pepper kind of drops out of the picture, doesn't he? Well, I think the point is when weighing, you know, and I think this court has said have to if it's not a frivolous argument. You know, if something points down, you have to consider it. And it points down whether you're giving an upward or a downward variance. But I'm happy to move to talk about the… What I would want to know is what would you instruct us to do if we were to remand? What would you have us instruct a new district judge? I would have the court say that there was error in the 65-month variance, so the 240 months needs to be vacated and remanded for resentencing. And that's not saying Judge Lamberth couldn't still give a variance. Theoretically… When you say variance, not to say that he wouldn't still upward vary. Upward vary. Right. Resentencing, you take a risk. Right. But some of his reasons are infected with error. And we don't know if he had not made these errors if he would have given 65 or less. So if we were… Go ahead. If we were just focusing on the rehabilitation issue, is the remand… I just want to make sure I understand what the error is in your view. Is it at bottom it's he was supposed to consider Mr. Arrington's character today at the resentencing rather than what he thinks his character was in 2001? And so you have to… I think it's just sort of… Rehabilitation towards… Essentially, but I guess I would put it as far like given that he's rehabilitated, that weighs into the 3553 factors like his history and characteristics. That's what I'm getting. Yeah, yeah, yeah. And if that was the only error, then I guess there could be a remand to weigh that. But I think there's these other errors that contributed to an amount. If that was the only error, can you give us your best argument that that was prejudicial? Yes. By not considering his rehabilitation by 2024, that might have changed the outcome? Yes. So I think… I guess the government has argued… I don't think the government has argued that this error is harmless, but it's not harmless in light of the rationale about the shooting because, as we talked about in the brief, when Judge Lambert said, I would give the maximum because of the shooting, that statement was infected with this misunderstanding that the injury had not been accounted for. And then when it came time for the statement of reasons, the court withdrew that part of the justification, that premise for his statement, the injury, and just relied on sort of the general wrongfulness in inflicting the injury. And so that statement really no longer stands. And again, I guess the government does say that the shooting alone called for 65 months and that therefore the rehabilitation is harmful, but the rehabilitation is a counterweight to that. So even if it's true that the judge thought it called for a full 65, he didn't consider something that pushed the other direction. Well, but the thing about what you're saying embedded in your comments is a suggestion that just because somebody has rehabilitated, they automatically get that consideration when part of rehabilitation is so that you become a productive model for society. That should be something that you do. It's almost like your child doing well at school and they want so much credit for that. That's what they're supposed to do. I understand, but not everyone does. So when the court has an opportunity to resentence someone years later, it is relevant and it's been found. But also embedded in your suggestion is that we don't look at how egregious the conduct was in the first place. Sometimes it's just really bad, just like when people come before me, you know, being sentenced as a former district judge and they committed murder as their first offense. And then the defense counsel argues, oh, they have no prior record. Is it murder bad enough? Well, I understand that it's up to the court to weigh. The problem here is the court didn't give it any weight because of this misunderstanding that it wasn't relevant. He was conceiving his task as putting himself back, and I think the evidence of that- He never said it wasn't relevant. He said I'm sentencing the person back then. We've been over that ground. One thing I want to comment on, you mentioned in passing with respect to the question that Judge Garcia asked about harmless error that the government never argued it. Harmless error. There's a case, the law of the circuit is that the government can't waive harmless error because it's for the benefit of the judiciary and our process. And the case is United States versus Price, P-R-Y-C, in the early 90s in an opinion by Judge Williams. So you're not claiming that the government waived it? No. No, I'm not saying they waived it, but I'm just- and they do say, I want to correct, they do say that because the court said the shooting justified the maximum, which is a flawed statement that the court essentially retracted in part. But they don't deal with the fact that this is a counterweight. So even if you thought that was true, that he thought that, he still didn't consider something. I wanted to say that some evidence of the fact that the court thought he could not do that, that it was irrelevant, is the fact that he went back to determine the sentencing, came back out from recess ready to- said he had determined the sentence, and he had not invited any allocution for Mr. Arrington, which- The probation pre-sentence report didn't recommend a downward departure because of rehabilitation, did it? No, and they didn't. I don't believe it recommended an upward variance either. It said no grounds, I believe. So this was coming out. But I think if the judge was taking into account- I'm not saying, Your Honor, that he can't say he's not persuaded by it, but it seems here he made a legal mistake. But if I can turn to the error about the illegal nature of the gun, because the government there has conceded that the court's finding that the gun count was effectively dropped out of the sentencing calculation was erroneous. The government acknowledges that the gun did not entirely drop out, quote-unquote, and that but for the gun count, the guideline range calculation of 140 to 175 would have been capped at 120, meaning that the gun count effectively added 55 months to the guideline range on count one. And the court said that the count one offense level didn't account for the illegality of the gun, but without the gun count, the count one offense level could not be effectuated, and in that sense, it did affect the offense level of count one. So the illegality of the gun did add 55 months of punishment to the punishment for the assault, and the court was wrong in thinking it wasn't specifically accounted for as independent lawful conduct. And the government tries to get around this by spinning the record and saying that the court made a finding, quote-unquote, that merely increasing the applicable statutory maximum did not fully account for the gun contact, but the court did not make any such finding or anything close to it. The court said nothing at all about the gun increasing the statutory maximum, let alone whether the resulting increase, 55 months, was enough to, quote, fully account for the gun itself. The court was focused on the technicalities of the offense level calculation rather than on what conduct was leading to what punishment. So because the 65-month variance was based in part on an erroneous understanding that the illegality of the gun had contributed nothing to Mr. Arrington's guideline range, when, in fact, it had already contributed 55 months, a remand is required on that basis alone. And we also believe, if there's no questions about that. All right, well, we'll give you your minutes in rebuttal. Thank you very much. May it please the court, Timothy Cahill for the United States. The district court did not commit any procedural errors in resentencing Mr. Arrington, and, therefore, a remand is unnecessary in this case. Judge Lamberth did not plainly err by declining to afford weight to Arrington's post-sentencing rehabilitation, particularly under the specific circumstances of this case, where Arrington had already completed his maximum term of incarceration. Now, we acknowledge that in his oral statements, Judge Lamberth, some of his language may have been inartful, but in the context of the arguments that he was presented with and was ruling on, we submit that the most reasonable interpretation of them is that he was explaining that he would not afford weight. So, before we talk about what he actually said, can I just understand your view of the law? So, the very first 3553A factor is the history and characteristics of the defendant. If the judge had said, I'm not looking at your history and characteristics today, I'm looking at your history and characteristics as of 2001, is that an error? If there was nothing under the circumstances of the case to justify that, I think if he just flat-out indicated that he believed as a matter of law that he would not be looking at anything after 2001, then I think that would be counter to Rhodes and to Pepper. Okay. So, your next argument is, but the sentence was completed, so he didn't have to look through his history and characteristics today. So, in any particular case, I think a key distinction I want to draw here is whether a court needs to consider an argument versus whether they need to consider a factor. So, someone made an argument about whether a factor is relevant or not, but a court can decide, having listened to the arguments about that factor, that under the circumstances of a particular case, that factor doesn't bear any weight. That factor doesn't bear weight on the outcome of this case under these circumstances. I think, yeah, I think everyone agrees that if what the judge had said was, I hear your argument about rehabilitation, but that's outweighed by your criminal history and your actions, that that would be fine. And then the next question would be, what if he just said, when your sentence has ended, your current characteristics are categorically irrelevant, which seems to be your argument. I think that was his basis, and he explained that that was the basis. I mean, I think that's largely how we read his decision in this case. I think there's more than just that it be the sentence ended. I think there's also factors that the government had just argued to him about the fact that that was a sentence imposed by another jurisdiction. That jurisdiction had opportunities to review that sentence and had declined to reduce it. I think all of those play in here. I think our key is that under those particular circumstances here, including the fact that the sentence was fully completed, that he declined to afford weight to that factor, that that was within his discretion to do. That that was legally permissible and within his discretion. And that's how we read his comments. So you don't think he said, I'm not looking at the person in front of me today and his characteristics? I think there's tension within his statements. I think he makes statements about Mr. Arrington being on the right path and sentencing the person who committed the crimes back in 2000, that he also says immediately after that, I have to sentence you with what I have today. I think there's ambiguity in what he said. And given that ambiguity, I would refer to the Kenney decision that we cited in our brief, where taken in isolation on its face, the court said something about sentences have to be consecutive, which was incorrect under the guidelines. And this court declined to read that as an error of law, just taking that sentence, that fragmentary comment in isolation. It looked at the entirety of the comments. It looked at the arguments the parties had presented. It looked at the nature of the ruling and said, we don't read this as an error of law. In the context of what this judge was saying from the bench, we read this as the judge making a discretionary decision. But your version of his discretionary decision was that on the facts of this case, the defendant's current character is irrelevant. Certainly that it didn't warrant a reduction, that it didn't bear on reducing it because he had already served his entire sentence. Because to the extent that he was serving a sentence imposed by another jurisdiction, the court was going to decline to expedite that where that other jurisdiction had declined to do so. Those were the arguments.  So my one question I have is what you're saying makes perfect sense if we only think of his rehabilitation as relevant to the need for incapacitation for recidivism purposes. That's entirely about the ongoing incarceration on a separate crime. And I understand your argument on that. But that's why I started by saying the very first factor is not the need for incapacitation. It's look at the history and characteristics of the defendant and what argument is there. I'm struggling to understand the government's argument that you don't look at the history and characteristics of the defendant in front of you here today. I mean, the sentencing memorandum, more than half of it is about exactly this. It's my character has improved. And then at the end, there's a short section about and you don't need to worry about recidivism. But it's look at my characteristics today. And if the court didn't do that, why isn't that an error? And so, again, we read Judge Lambert's comments as not saying that he didn't even look at that. In fact, he clearly did look at it because he commented on it at the trial. It did not escape his attention. But whether or not he determined in this particular case, whether or not that bore any weight on the outcome of his decision. So I recognize, you know, the 3553A factors are something the court needs to at least look at in every case. But in our briefly cited case law, in fact, the statute itself suggests that just because the court has to look at those factors doesn't mean that they will have a bearing on the outcome, on the sentence. In a particular case, the court might say under these circumstances, that factor does not affect the sentence I am imposing. And as long as there's a reason for that within the court's discretion, that wouldn't be a legal error or an abuse of discretion. And our interpretation of Judge Lambert's comments under the entire, on the entire record is that that's what happened here. And if I start from page 259, where he says, because I would presume Judge Lambert knows the law as you're setting it out. And if I start it on page 259, where he says, I'm not sentencing you, the person in front of me today. I'm sentencing you as if you were the person in 2001. Where do you want me to look in the transcript to persuade me that he actually did consider his current character? I mean, I would say the very next sentence is I'd have to, I have to sentence you with what I have today. And I acknowledge there seems to be tension between those two. And that's why we look at the, I said, I mean, we look at the arguments he was responding to. It wasn't, it wasn't that these issues weren't fully fleshed out. They were in both the briefing and the arguments before him. And that's how we, that's how we read his comments. But then he also said, of all the young guys I've sentenced since when they were young, you're not that person anymore. And I took that to mean that he's aged. I think, I mean, I think there's no other way to read his comments than that he is responding to what Mr. Arrington's, attorney Mr. Arrington had spoken about his efforts at rehabilitation, the judge's commenting on them. But I think ultimately he made a discretionary decision that under the circumstances here, that did not warrant a reduction. And the other point that you made is that there's another case in this circuit that we decided where Judge Lambert specifically took rehabilitation into account to reduce the sentence. I think that was the Hunter decision. I think he actually did not end up reducing in that case. But he fully, he fully and more expressly, certainly more than he did on this record, I'll acknowledge, more expressly considered. And he properly applied Rhodes and the Rhodes decision. And this court affirmed and indicated that his analysis was correct. And so we don't even just have to deal with the presumption that judges know the law here. We have a published opinion saying that this court affirmed Judge Lambert for correctly applying the very law that's at issue here. And that's why we viewed, to the extent that there's tension in his comments, we view them as his inner full language, not as an error of law. I did also want to respond to the other argument that was addressed during the appellant's argument, which is about the consideration of the felon in possession stolen gun charge. I wanted to make absolutely clear, the government does not concede that there was any error by Judge Lambert here. To the extent that we acknowledge the statutory maximum played a role in the sentence, that does seem to be an obvious statement of law. The statutory maximum plays a role in every sentence. In determining the appropriateness of a variance, the proper benchmark is the guidelines numerical range, which attempts through the application of categorical rules to measure an appropriate term of incarceration based on specific conduct in a particular case. So if a judge is varying from that, it's got to be based on factors that were not captured by those numbers. And with respect to that numerical range, Judge Lambert was absolutely correct. Mr. Arrington's felon status and the aggravating fact that the gun was stolen did drop out in the sense that they played no role in determining the numerical range that he was looking at and that he was varying upward from. And we would submit that that's the appropriate benchmark that he was referencing, certainly in context, not the statutory maximum. There are no other questions from the bench we would otherwise rest on the arguments in our briefing and ask that the judgment of the district court be affirmed. Thank you very much. Thank you. On that last point, Mr. Cale is saying that the error played no role in the numerical range, only the statutory max. But in this, when the statutory max is less than the range, I think it's 5G 1.1 or 1.2, they talk about you have to limit the range. So the range but 4 would have changed from 140 to 175 to 120. So it did affect not just the range but the sentence. And I think he also said the stat max is always relevant, but it's not always relevant because it doesn't always bump up against the guideline range. So this case is different. On the thing Judge Lambert said about I go with what I have today, again, I think what he is saying there is I'm putting myself in Judge Robertson's place. I want to defer to him. You never got a constitutional sentence. Judge Robertson never had a chance. Now, I have to figure out what Judge Robertson would have thought back in 2001 if he were there then with this new legal information. And to do that, I only have what I have right now to make that, to figure that out. I think that's all he's saying there. And I just don't think you can read this sentence as not categorically refusing to give weight to the. But you also don't have in the record that he explicitly stated I cannot consider the rehabilitation. Like, you don't have any affirmative statements that indicate he explicitly did not consider it. I mean, to us, this is explicit, I guess I would say, because that's what the rehabilitation is about is how have you changed between who you were then and who you are today. And that's what he says. He's got it backwards there. And I do think, again, yes. But even then, it's a may, you know, like you can weigh it, but you can also discount it. True. Right. But here he's legally essentially putting it out. It's not just not relevant, which is different than saying I'm not convinced by it or it's outweighed by other things. We agree he could do that, but that's not what he did. And I think unless there's other questions. Okay. Thank you. Thank you as well.
judges: Childs; Garcia; Randolph